## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**UNITED STATES OF AMERICA**,

              Plaintiff,

vs.                               **Case No. 17-CR-20191- 005**
                               **Hon.  BERNARD A. FRIEDMAN**

**SUSIE GUERRERO**,

              Defendant.

_____/

**MARSHALL E. GOLDBERG (P35788)**
Attorney for Defendant
The Ford Building
615 Griswold St., Suite 1120
Detroit, Michigan 48226
(313) 962-4090
megoldberg2003@yahoo.com
_____/

### DEFENDANT'S SENTENCING MEMORANDUM
### IN SUPPORT OF REQUEST FOR DOWNWARD VARIANCE

Defendant, Susie Guerrero has entered a plea of guilty to the Conspiracy with Intent to Distribute Controlled Substances, 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B).  The penalty for this offense, unless otherwise supported by a basis eliminating mandatory minimums is 5 to 40 years imprisonment and at least four years of supervised release and a fine of up to Five Million Dollars. Defendant entered into a Rule 11 Agreement wherein the government made a non-binding recommendation of a sentence of imprisonment to be no more than the mid-range of the sentencing guidelines.  Those guidelines were calculated to be 30 to 37 months, if the defendant were to satisfy

1

the safety valve.  The parties recognize that the safety valve was satisfied, therefore eliminating the mandatory minimum.

Specifically, Defendant  pled guilty pursuant to a Rule 11 Plea Agreement to Count One of the First Superseding Indictment.   The Court  took the Rule 11 Plea under advisement.  The defendant has remained under the supervision of Pretrial Services.  The Presentence Report was prepared, as well as a psychological evaluation by Doctor William R. Nixon, Jr., Ph.D, a licensed Clinical Psychologist.

Defendant is respectfully requesting that this Honorable Court sentence Susie Guerrero to a non-custodial sentence, or alternatively, a minimal term of incarceration under the minimum guideline range.  There are circumstances that exist in this case that warrant a sentence below the calculated guidelines.

**PERSONAL INFORMATION**

Susie Guerrero was raised in Pontiac, a Michigan.  Her childhood was punctuated with death, tragedy, abandonment, and every imaginable trauma.  During Susie Guerrero's youth, her mother, Maria Guerrero, suffered major health crises.  Her mother's medical condition caused her to become medically disabled.  She suffered from lupus, tuberculosis and arthritis.  Ms. Guerrero's mother died when Susie was 12 years old.  Her father,  Rosendo Guerrero was a harsh disciplinarian.  He was abusive of Ms. Guerrero's mother prior to her illnesses.  Susie Guerrero witnessed  this abusive behavior by her father.  In 1994, at the age of 16, Susie Guerrero's father was shot and killed during a home invasion.  Ms. Guerrero arrived at the home while paramedics attended to her dying father.

Despite Ms. Guerrero thinking she " had a pretty good childhood",  she often went without the basic necessities.  There were food insecurity issues, household violence, and a home life that

2

was turbulent.  While she was still a minor, Susie Guerrero's brother, Rosendo Guerrero, Jr.,  was murdered during a home invasion.  There is not clarity as to whether this was linked to a drug dispute.   Many of the other family members are codefendants.  Many of Ms. Guerrero's siblings have exhibited substance abuse issues as described in the Presentence Report.

Raul Guerrero took in Susie and her younger siblings after the death of their parents.  He supported the children with Social Security benefits due because of their father's employment.  The living conditions were deficient; Susie and her siblings were not attending school.  Child Protective Services became involved with the family because of these conditions.  Susie Guerrero dropped out of school after the 8th grade despite having often being placed in advanced classes.  Susie and her siblings were placed in foster care for approximately six months.  Two of her siblings were adopted by her brother and given the last name Wade.  Susie refused to go to foster care and fled a court hearing.  At age 16,  the Court granted her emancipation.

It was around this time that she discovered she was pregnant by her then boyfriend Walt Morris.  Walt Morris was similarly a minor.  Morris was engaged in criminal activity.  He was shot and killed during an undercover DEA operation in 1997  just as Susie Guerrero was reaching adulthood.  The associated drug investigation lead to charges against Guerrero's brother Raul and her sister Virginia.  During this period, Susie Guerrero  gave birth of her daughter, Antonia Morris. Susie and her daughter Antonia have an extremely strong relationship.  This relationship provides the kind of stability, love and support that was lacking in Susie Guerrero's childhood.  Antonia has now given birth to Susie's only grandchild.  Susie is very involved in her granddaughter's life.  They live together and support each other.

Not surprisingly, Susie Guerrero went through her childhood and her adult life with

3

undiagnosed mental illness issues. It wasn't until this pending case that Susie was diagnosed or counseled as to her mental illness. She has treated with a therapist monthly as a condition of her pretrial release. She intends to continue that treatment or a similar treatment if permitted. She has explained to counsel how these sessions have helped her reduce the anxiety in her life and has lead to a higher level of self esteem. Susie Guerrero is presently living in a rental property along with her daughter and granddaughter. She is gainfully employed and is well thought of at her place of employment.

Susie Guerrero had a psychological evaluation conducted by Doctor Nixon. The details of this report will be submitted under seal. However, certain things were noted by doctor Nixon. This includes that Ms. Guerrero had been in a series of relationships where she was physically abused. In one relationship she was stabbed in her lower right leg and left shin during a period with an abusive boyfriend. Although she was experiencing diabetic symptoms, until recently she did not have insurance coverage and did not get appropriate medical care. Ms. Guerrero has a history of anxiety and panic attacks. She has suffered with night terrors for years. Despite these issues, Susie Guerrero presented herself to probation as an intelligent, thoughtful person.

Susie Guerrero had, at the time of her evaluation, suffered from a major depressive disorder. She suffered with anxious distress at a severe level. Doctor Nixon concludes that Ms. Guerrero had suffered from two severe chronic mental illnesses that had gone ignored since early adolescence. The clinician believes that much of this is linked to the childhood trauma experienced by Ms. Guerrero. That the mental illnesses were not appropriately diagnosed and treated at an early age. The clinician opined that any additional punishment for this patient for " the sins of her childhood and adolescent environments, where she was subjected to repeated trauma at every level as a child

4

and adolescent that directly led to the expression of the criminal conduct for which she is now

charged, that the sentencing she now faces should reflect rehabilitation for a psychological core to

offer the opportunity to in the future rise above the failures of her family and our community".

## THE LAW

18 U.S.C.A. § 3553 provides in pertinent part:

(a) Factors To Be Considered in Imposing a Sentence.— The court shall impose a sentence
sufficient, but not greater than necessary, to comply with the purposes set forth in
paragraph (2) of this subsection. The court, in determining the particular sentence to be
imposed, shall consider—

   (1) the nature and circumstances of the offense and the history and characteristics of the
   defendant;
   (2) the need for the sentence imposed—

      (A) to reflect the seriousness of the offense, to promote respect for the law, and to
      provide just punishment for the offense;

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant; and

      (D) to provide the defendant with needed educational or vocational training, medical
      care, or other correctional treatment in the most effective manner;

   (3) the kinds of sentences available;

   (4) the kinds of sentence and the sentencing range established for—

      (A) the applicable category of offense committed by the applicable category of
      defendant as set forth in the guidelines

         (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title
         28, United States Code, subject to any amendments made to such guidelines
         by act of Congress (regardless of whether such amendments have yet
         to be incorporated by the Sentencing Commission into Amendments issued
         under section 994(p) of title 28); and

         (ii) that, except as provided in section 3742(g), are in effect on the date the

5

defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

In the *United States v. Booker,* 543 U.S. 220 (2005), the United States Supreme Court rendered the mandatory Sentencing Guidelines unconstitutional. It severed the guideline's statutory provisions and ordered it "effectively advisory." As a result of *Booker,* the sentencing courts have broad discretion, after applying the guideline range, to apply an appropriate sentence. The Court has decided that the first step to sentencing is to apply the sentencing guidelines. In *Gall,* the Court indicated that a "District Court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall* v. *United States,* 552 US 38, 49, 128 S Ct 586, 596, 169 L Ed 445 (2007). A District Court is prohibited from presuming a recommended guideline is reasonable. *Id.* Instead, the Court must make a determination based on

facts. *Id.* if the Court concludes a variance is proper, then it must consider "the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." *Id.*

Sentences must be both procedurally and substantively reasonable, and courts have distinguished between the two. *United States v. Poynter,* 495 F.3d 349, 351 (6th Cir. 2007). For a sentence to be procedurally reasonable, when a defendant raises non-frivolous arguments in seeking a lower sentence, "the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Recla*, 560 F.3d 539, 547 (6th Cir. 2009) (citing Rita). To be substantively reasonable, the sentence must be "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States* v. *Vowell,* 516 F.3d 503, 512 (6th Cir. 2008) (internal quotations omitted).

When applying the aforementioned factors to Susie Guerrero, the Court "must make an individualized assessment based on the facts presented" by the case without giving presumptive weight to the guidelines sentencing range. *Gall,* supra at 48-49. See also *Koon* v. *United States,* 518 U.S. 81, 113 (1996) (stating every convicted person should be considered as an individual and every case considered as a unique study in human failings). Judges are encouraged to consider all relevant facts to avoid sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary. *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000). Susie Guerrero's case is one that warrants attention to her personal characteristics and flexibility by this Honorable Court.

## BASIS FOR A VARIANCE BELOW SENTENCING GUIDELINES

**A. DEFENDANT SHOULD BE GRANTED A VARIANCE IF THE ADVISORY GUIDELINES ARE GREATER THAN NECESSARY AND THE PURPOSE OF SENTENCING IS SATISFIED BY A SENTENCE BELOW THE GUIDELINES**

*United States v. Redemann,* 295 F. Supp. 2d 887 (E.D. Wise. 2003) was a bank fraud case where the guidelines were 18-24 months, and the court departed downward two levels in part because the case was outside the heartland and the guideline sentence was "greater than necessary" to satisfy the "purposes" of sentencing. "Courts have long recognized where the sentence called for by the guidelines would result in punishment greater than necessary the court can depart downward." Additionally, 18 USC. § 3553 (a)(l)(2)(A)-(D), provides as follows:

(a) Factors to be Considered in Imposing a Sentence.- The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider-

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed-

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide a just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

*United States* v. *Harrington,* 947 F .2d 956, 964 (D.C. Cir. 1991) address the sentencing guidelines and that they "often produce harsh results that are patently unfair because they failed to take account of individual circumstances..." Further, *U.S.* v. *Molina,* 963 F. Supp. 213, 215 (E.D.N.Y., 1997) stated that "[t]he all-too-familiar harshness required by rigid federal

Guidelines... and the depredations they wreak upon individual defendants and their families."

Addressing the sentencing factors listed in 18 U.S.C. § 3553(2)(A)-(D) and applying each in this matter will show that any real sentence beyond a minimal range is substantially greater than necessary to meet the purposes of sentencing. Even if the government advocates for a custodial sentence within the guideline range this is an excess of what is necessary or warranted in the case before the court. Anymore substantial term of imprisonment would be disproportionate as a fair and just punishment for this crime given the horrendous life experiences of Susie Guerrero and societal's failures in addressing her needs.

Susie Guerrero admitted responsibility, she has been cooperative with law enforcement in this matter. Ms. Guerrero's adult criminal contacts are largely nonexistent. Ms. Guerrero's does not have any adult felony convictions. She has accepted the wrongfulness of her conduct and has learned greatly from her mistakes. She is now permitting herself to heal with insight into how to deal with her childhood trauma and the effects that continue today. She plays an integral role in the lives of her daughter and granddaughter. Ms. Guerrero does have some diabetic issues that she will continue to have to address in the future. Any sentence, even at the minimum guideline range is more than sufficient to serve the purposes of sentencing under 18 U.S.C. § 3553(2)(A)-(D) and still would fairly take into account Ms. Guerrero's individual circumstances and the seriousness of her offense.

**(B)     DEFENDANT SHOULD BE GRANTED A DOWNWARD VARIANCE BECAUSE THIS IS HER FIRST FELONY CONVICTION**

In *US vs Paul, 561 F3d 970 (9th Cir 2009 )*, the defendant was convicted of embezzlement and the guidelines were 10 to16 months and the court sentence of 15 months was unreasonably high, in part, because the court failed to adequately consider the defendant's first time offender with no criminal record.  Similarly in *US vs Huckins, 529 F3d, 1321 (10th Cir 2008)*, the defendant was convicted of child pornography and the guidelines were 78 to 97 months.  The courts variance to 24 months was proper because this had been the defendant's first conviction, rejecting the government's argument that the guidelines already considered this by placing defendant in criminal category I.  The court found that:

> Although the guidelines discourage granting a downward departure based on criminal history when the defendant had been placed in the criminal history category of 1 this is not a departure case, it's a variance case... and, after *Gall* and *Kimbrough*, a factor is disfavored by the guidelines is no longer excluded from consideration under §3553 (A)... therefore adjuster court may weigh defendant's lack of criminal record, even when the defendant has been placed into a criminal history category of I, in its § 3553 (a) analysis.

Other than the traffic matters that Ms. Guerrero may have committed her contacts are at worst a misdemeanor  while a juvenile.  Given this, a significant variance to the bottom end of the guidelines is appropriate under these circumstances.

**(C)     DEFENDANT SHOULD BE GRANTED A VARIANCE BECAUSE INCARCERATION IS NOT NECESSARY TO PROTECT THE PUBLIC**

Defendant's background and character, not just the negatives reflected in her criminal history". Guerrero has no prior record and the letters submitted on her behalf set forth her highly regarded character as a friend, mother, wife and member of her community. Eighteen letters were submitted on her behalf and they all had a common theme; that she was a good person and mother. The letters relayed that she was helpful to others, charitable with time and donations, and had held a strong community interest. The letters submitted are universal and unwavering in the description of Ms. Guerrero's outstanding character and reputation.

In *U.S.* v. *Edwards,* 595 F.3d 1004 (9th Cir. 2010) the defendant was convicted of bankruptcy fraud and on probation for a prior state conviction for fraud. The guidelines range was 27-33 months, including a sentence of probation of seven months of which was to be served under house arrest. Additionally, there was a $5,000 fine, and restitution of $100,000. This was not an abuse of discretion in part because "Section 3553(a), for instance, does not require that the goal of general deterrence be met through a period of incarceration." Furthermore, citing legislative history: "It may very often be that a release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose.[1]"

In *U.S. v. Baker,* 502 F.3d 465 (6th Cir. 2007) the defendant pled guilty to possession of an unregistered firearm arising from an altercation with his wife during which a gun accidentally discharged. The guideline range was 27-33 months. A below-guideline sentence of probation with one year house arrest was appropriate in part because incarceration was not necessary to

---

[1]**S. Rep. No. 98-225, at 92**

11

protect the public.

### (D)   THE DEFENDANTS CHARACTERISTICS SUPPORT A VARIANCE BELOW GUIDELINES

The courts, close to *Booker*, have approved of downward variance from guidelines where the court provides a statement of reasons consistent with § 3553( a ) courts have taken into account the entire history of the individual being sentenced.  In one case the court affirmed a variance from 151 to 188 months to 84 months in prison where the court found that the defendant's own history of abuse an abandonment by his parents was one of the worst ever seen by the court.  *United States vs McBride, 511 F3d 1293 (11th Cir 2007)* the court similarly have recognized a defendant's health problems as being a basis for a downward variance.  The court can take into consideration a combination of physical and mental disabilities in fashioning a sentence below the guideline range. *United States vs Almenas, 553 F3d 27 (1st Cir 2009)* in granting a downward variance the court may find that either a shorter period of incarceration or some period of mental treatment during the course of a supervised release might be the most effective sentence.  *United States vs Myers, 503 F3d 676 (8th Cir 2007)*.  It is clear from the record as confirmed by US Probation and defendant's psychological evaluations that the defendant's history of undiagnosed and untreated mental illness linked to a lifetime of trauma supports a downward variance.

### (E)   SUSIE GUERRERO'S FAMILY CIRCUMSTANCES SUPPORT A DOWNWARD VARIANCE

Exceptional family circumstances may be taken into account.  The 6th Circuit has recognized that a downward variance may be appropriate when considering § 3553(a) in the concerns for protecting society.  The court may indicate that a sentence below guidelines would pursue the goals of this section not through a long term of imprisonment but through extensive counseling and

treatment and extensive period of supervised release.  *United States vs Grossman, 513 F 3d 592 (6th Cir 2008)*.  Susie Guerrero has not demonstrated that she is not the kind of criminal as the others charged.  Once removed from the negative influences that ensnared her she has blossomed into a stronger more confident and capable person.  Once removed from these negative influences she has demonstrated an extraordinary work ethic as supported in the letters that have been sent to council.  Her employer U-Pull and Save Auto Parts has resulted in the Schram family writing a letter about the quality of the work she has provided for the approximate two years of employment.  They described her as a valuable employee who always extended herself to her employer and provided quality and dependable work.  There are letters from people that have known Susie Guerrero much of her life these letters are written by Sarah Pasillas, Anthony Pasillas, Leticia  Pasillas, Ashley Rodgers, Vanessa Rodgers and Michelle Rodgers. (Exhibits A through G).  These letters describe the defendant as somebody who, despite having committed the offence for which she took responsibility, has assisted others in providing a level of stability and support in their lives.  Susie Guerrero did this despite having suffered all the trauma in her own life.  With counseling and direction while on supervised release there is no need to be concerned that the public is at risk of the defendant by the defendant for other offences.  A sentence that is non-custodial does not take away from recognition of the seriousness of the offenses with which she was charged.

### (F)     ANY SENTENCING DISPARITIES BETWEEN SUSIE GUERRERO AND ANY OF THE CODEFENDANTS MILITATE IN FAVOR OF A SUBSTANTIALLY REDUCED SENTENCE FOR SUSIE GUERRERO

In the time since *Booker*, courts look at factors of national disparities.  The case before us Susie Guerrero was both less involved and largely controlled by the higher ranking defendants.  Any sentencing disparities are supported in the record before the court.  Codefendant disparities is not

13

an improper factor.  United States vs Smart, 518 F3d, 800 ( 10th Cir 2008).  When the Codefendants

do not have comparable positions because of record, safety valve, or otherwise not similarly situated,

sentencing disparities are appropriate. *U S vs Phinazee, 515 F 3d 511 ( 6th Cir 2008); United States*

*vs Parker, 462 F3d 273 (3rd Cir 2006).*

The offense herein is not a violent crime and Susie Guerrero is not a danger to society.  In the

time she's been under court supervision she has worked, attended counseling, and supported

financially and emotionally her daughter and granddaughter.  She is now living a life of more

stability while being disassociated with her Codefendants.  The condition of her release was to have

no contact with the Codefendants.  She has abided by this condition all matter that has contributed

to her stability in the community.

<div style="margin-left:40%">

Respectfully submitted,

s/Marshal1 E. Goldberg
Attorney  for Defendant
The Ford Building
615 Griswold St., Suite 1120
Detroit, Michigan 48226
(313) 962-4090
megoldberg2003@yahoo.com
P35788

</div>

Dated: June 15, 2021